Jack E. Sands
Attorney at Law
3115 Poly Dr.
Billings, MT 59101
Tel: 406-245-2391
*jacksands0730@gmail.com*

D. Michael Eakin
Attorney at Law
P.O. Box 2218
Billings, MT 59103
Tel: 406-969-6001
Fax: 406-969-6007
*eakin.406law@gmail.com*

Attorneys for plaintiffs

**FILED**

5/21/2024

Clerk, U.S. District Court
District of Montana
Billings Division

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
BILLINGS DIVISION

| | |
|---|---|
| WILLIAM MYERS and JACK MYERS, | NO. **CV-24-56-BLG-SPW-TJC** |
| Plaintiffs, | |
| V. | COMPLAINT WITH DEMAND |
| CHARLES E. KEM, | FOR TRIAL BY JURY |
|    Sheriff of Stillwater County, Montana, | |
| NANCY RHODE, | |
|    Stillwater County Attorney, | |
| DAVID BRYAN ROE, | |
|    Elite Bovine Veterinarian Service, | |
| TRAVIS ELINGS, | |
|    Montana Department of Livestock, | |
| Defendants. | |

The plaintiffs, WILLIAM MYERS and JACK MYERS [hereinafter "Myers"], through their attorneys Jack E. Sands and D. Michael Eakin, allege:

## TYPE OF ACTION

1. This is a section 1983 action for damages for deprivation of rights by persons acting under color of state law. Plaintiffs also assert a 14th Amendment takings claim and a supplemental state law claim for conversion.

## JURISDICTION AND VENUE

2. This Court has jurisdiction pursuant to 28 U.S.C. section 1331, federal question jurisdiction. Venue is proper in the Billings Division of the District of Montana since all action occurred in Stillwater or Yellowstone County. This Court has jurisdiction over the supplemental state law claims pursuant to 28 U.S.C. section 1367.

Under 42 U.S. C., section 1983, Myers are suing these state and local officials for the deprivation of rights, privileges, or immunities secured by the Constitution and federal laws and when such state or local officials have acted under color of a statute, ordinance, regulation, custom or usage of the State of Montana and County of Stillwater. They are sued individually and in their official capacities.

## PARTIES

3. Plaintiffs William Myers and Jack Myers [hereinafter "Myers"] are residents of Stillwater County, Montana.

4. Defendant Charles E. Kem is a resident of Stillwater County, Montana and is the elected Sheriff of Stillwater County, Montana. He is the supervisor of the deputies in his office who under color of state law entered Myers' property and removed cattle owned by them, thus destroying Myers' livelihoods.

5. Defendant Nancy Rhode is a resident of Stillwater County, Montana and is the elected County Attorney of Stillwater County, Montana. She was actively involved in searching the Myers' property, seizing the Myers' cattle, and executing a search warrant and was physically present at the ranch property as the Myers' cattle were being taken from them. She also authorized the seizure and confinement of the Myers' cattle for nearly a month before she even filed criminal charges against Jack Myers and without ever filing criminal charges against William Myers.

6. Defendant David Bryan Roe, the owner of Elite Bovine Veterinarian Services, is a veterinarian and resident of Yellowstone County, Montana. He actively sought the seizure of Myers' cattle in cooperation with and under the authority of other defendants at times relevant to this complaint.

Specifically, Roe participated in the seizure of Myers' cattle, initially recommended that the animals be seized, arranged for their transportation to the Centana feed lot, and recommended that criminal charges be brought. He had

never treated the Myers' cattle or dealt with the Myers except to facilitate the confiscation of their cattle.

7. Defendant Travis Elings is an employee of the State of Montana and resident of Yellowstone County, Montana and was acting under the authority of and in cooperation with other defendants at times relevant to this complaint when he entered the Myers' property and assisted in rounding up, loading and transporting the Myers' cattle.

8. The defendants are sued individually and in their official capacities.

## FACTS

9. This complaint involves actions concerning the Triple Tree Ranch, which was owned by plaintiff William Myers as the sole surviving partner of a limited liability partnership -- the Triple Tree Ranch Limited Partnership. The partnership was owned initially by William Myers and his former wife Gwen Myers, who died in 2019. After Gwen's death, the Triple Tree Ranch Limited Partnership has been owned solely by William Myers.

10. Plaintiff Jack Myers, son of William Myers, lived with his family in one of the houses on the Triple Tree Ranch property. Jack owned and cared for some of his own cattle located on ranch property, and assisted in caring for plaintiff William Myers' cattle and a few cattle owned by neighbors who grazed their cattle

on the property. He is a long-time rancher and has an associate college degree in agriculture studies.

11. On May 25, 2021, Haley Barker, one of Myers' neighbors who had had past controversies with the Myers, who was a personal friend of Stillwater County Under Sheriff Randy Smith, and who was an employee of the Montana Department of Agriculture made an after-hours personal telephone call to Smith to report her view that cattle on the Triple Tree Ranch were not being cared for properly. She later was involved as a State of Montana employee in analyzing hay seized from the Myers as a part of Jack Myers' criminal trial.

12. After receiving Barker's call, Under Sheriff Randy Smith made a personal, after work, inspection of the Myers' cattle from the nearby county road that evening. Later that same evening he and other members of the Sheriff's office began the process of obtaining a search warrant.

13. Early the next day, May 26, 2021, acting through Under Sheriff Randy Smith, and other members of his staff, Sheriff Kem's staff obtained an ex parte search warrant from Yellowstone County District Court Judge Collette Davies to search the Triple Tree Ranch property for evidence of animal cruelty.

14. Later in the day of May 26, Sheriff's deputies, Nancy Rhode, veterinarian David Bryan Roe, Travis Elings and others of the State of Montana

Department of Livestock under Elings' direction went to the ranch and served the search warrant on Jack Myers.

15. Under Sheriff Randy Smith personally presented the warrant to Jack Myers and told him if he interfered he would be arrested or shot.

16. The personnel listed above and their associates searched by foot, vehicles, drones, and horseback to locate cattle and obtain evidence. They seized 63 cattle that day and took at least 432 photos.

17. The following day, May 27, the same group returned and used the same search warrant to take an additional 399 cattle -- all of the remaining Myers' herd as well as a few cattle the Myers were pasturing for a 3rd party. Myers' corrals, chutes, loaders and other ranch facilities were utilized to facilitate the loading on both days.

18. Without any consultation with the Myers and without informing them, all cattle taken from the Myers' ranch were trucked to Centana Feed Lot in Joliet, Montana. David Bryan Roe arranged the trucking and the feed lot.

19. The cattle's location was kept secret from the Myers until July 27 -- two months later and only one business day before the court hearing on their motion to release the cattle pending Jack Myers' trial. They were forced to view their cattle from beyond a fence.

20. At no time prior to taking the cattle did the Sheriff obtain an order from any court authorizing the seizure of these cattle-- as opposed to the warrant that authorized the search of them.

21. Although William Myers' cattle were seized and eventually sold to pay their feed bill at the Centana lot where Sheriff Kem involuntarily placed them, William Myers was not and never has been charged with any criminal action.

22. Moreover, all the Myers' cattle were eventually taken from the Centana lot and sold for slaughter at public auction yards – ironically "protecting" Myers' cattle by killing them.

23. Some of the neighbors' cattle seized from the Triple Tree Ranch property were returned to their owners, but Jack and William Myers were also charged for the costs of caring for them.

24. On June 3, 2021, Myers, through their attorney, called and emailed Nancy Rhode, the Stillwater County Attorney who had personally supervised, on scene, the removal of their cattle requesting the return of their cattle pending the institution of any criminal charges. She refused. Please see, Ex. A.

25. On June 17, 2021. Myers through their attorney wrote to Montana Attorney General Austin Knudson asking that pursuant to his supervisory control over county attorneys he assist in getting their cattle released pending trial and that

the proceedings be expedited because the detention of their cattle was threatening financial disaster without due process. He declined. Please see, Ex. B.

26. On June 21, 2021, Rhode finally filed criminal charges against Jack Myers in Stillwater District Court: Aggravated Animal Cruelty-- Stillwater County Criminal Cause No. DV 23-61. The charges were that Jack Myers had not properly cared for the cattle. William Myers was not charged with anything.

27. Jack Myers was arraigned on the criminal charge on June 24, 2021.

28. Presiding Stillwater District Judge Matt Wald released Jack on his own recognizance when Rhode didn't oppose Jack's request for that.

29. At the arraignment, Myers also requested that the cattle be returned pending trial. However, Rhode objected – apparently believing the cattle were more in need of protection from Jack than the public was from him. Judge Wald concluded that the cattle's release and the trial itself should be heard by another judge because he deemed himself disqualified because he had previously done legal work for Jack Myers.

30. District Court Judge Olivia Reignier of Glendive was called as a substitute judge.

31. On July 13, Judge Rieger set a hearing for July 28 on Myers' ongoing motion for release of the cattle pending Jack's criminal trial. On July 21, the State

filed a civil action, entitled an "Animal Welfare Petition", and the next day--without notice to the Myers and without service of the complaint on the Myers--Judge Rieger set the civil petition for hearing on the same time and date (July 28) as Myers' motion in the criminal case. This gave the Myers six days to formally respond to the now convoluted criminal/ civil action. Myers' objections were ignored.

32. On August 2, Judge Rieger ordered that the Myers' cattle remain held at the Centana feed yard pending trial and ordered that the Myers be responsible for the costs.

33. When the Myers were unable to pay the feed yard and other costs, the State moved to forfeit the cattle herd to the County, and that motion was granted. The Myers signed a stipulation allowing the forfeiture to proceed, but objecting to it and reserving all rights to challenge it in future proceedings.

34. A criminal trial was held against Jack Myers on February 22 through 24, 2022. The jury heard from four local veterinarians who had treated Myers' cattle and whose testimony was favorable to Myers and from defendant veterinarian Daniel Bryan Roe whose testimony was favorable to the State.

35. The jury was unable to reach a unanimous verdict. Post trial discussions with the jury indicated that a clear majority—though not unanimous – number of jurors favored a not guilty verdict.

36. A mistrial was declared. Afterwards, Jack Myers moved to substitute Judge Rieger. The motion was at first denied and then eventually granted only after it was clearly established that Judge Rieger had no legal authority to deny it.

37. District Court Judge Luke Berger was called as a substitute and issued a scheduling order.

38. On June 14, Judge Berger signed an *ex parte* order granting the State's motion for leave to file an amended information to add a misdemeanor charge to the existing charge. Myers' filed a Rule 60(a), M.R.Civ.P. motion to reverse the order on various grounds -- including that it was granted without notice or an opportunity to be heard, was granted after Judge Berger's own deadline for motions had expired, was possibly in violation of the Montana Constitution's ban on double jeopardy, unduly prejudiced Jack Myers, <u>was dated prior to the day the State had even filed the motion</u>, and was fundamentally unfair. Myers' motion specifically noted:

> " ... 27-1-434(7)(b)(ii), MCA requires that if the defendant is found not guilty of the criminal charges, the county shall pay the respondent the fair market value of the animals at the time of seizure. Therefore, the State needs a conviction, even if for only a misdemeanor, in order to avoid civil liability. Even if convicted of the felony charges, Jack Myers would be a

first time non-violent felony offender, for which the Montana Sentencing Guidelines suggest a deferred sentence might be appropriate. Therefore, amending the charge to one felony and one misdemeanor instead of two felonies provides little benefit to Myers. Myers had thought of filling a double jeopardy defense (on the grounds that the Montana's Constitution provides greater protections against double jeopardy than the federal constitution). For a general discussion of this issue, please see *State v. Valenzuela,* 495 P.3d 1061. If the State is allowed not only to retry the case but to add alternative charges, one of which alters the theory of its case, it would strengthen the defense's argument for a double jeopardy motion. That of course is now foreclosed because the time for defense motions has expired."

The State responded on November 23, 2022 arguing that because Jack Myers was not found "not guilty" rather than not found "guilty", the Myers were not entitled to recovery.

Again, the State had ignored the plain fact that William Myers' cattle were seized and sold without any charges <u>ever</u> being brought against him.

39. Judge Berger later considered Jack Myers arguments but signed an order confirming his earlier *ex parte* order granting the State's motion. Judge Berger continued to ignore William Myers' argument that his cattle shouldn't have been confiscated since he was never implicated in criminal charges.

40. Shortly thereafter all criminal charges against Jack Myers were dismissed, but actions confiscating the Myers' cattle remained effective. The net effect was neither Myers was convicted of anything, but their cattle, ranch, and livelihoods were gone.

41. Rather than appeal Judge Burger's decision on confiscation again, recognizing that State Court exhaustion is not required in federal rights litigation, and being emotionally and financially drained by these state proceedings, this action was filed.

## CAUSES OF ACTION

42. The defendants and each of them were operating under color of law when they seized the cattle belonging to Plaintiffs.

43. The seizure of William Myers' cattle without timely post seizure hearings to which he was a party denies William Myers his rights to due process of law under both the Fourteenth Amendment of the United States Constitution and Article II, section 14 of the Montana Constitution.

44. The seizure of Jack Myers' cattle without a timely post seizure hearing denies his rights to due process of law under both the Fourteenth Amendment of the United States Constitution and Article II, Section 14 of the Montana Constitution.

45. As a result of the seizures of their cattle, both Myers have suffered damages in amounts to be proven at trial. Those damages include the loss of the cattle. Moreover, without the cattle, which had been seized and sold as a part of the criminal action against Jack in order to pay the Centana Feedlot bill, William Myers was without income to pay his loan to First Interstate Bank, and the Bank

began actions to foreclose its note for which the Triple Tree Ranch was security. As a result of those actions, William Myers lost most of the Triple Tree Ranch as well as all of his cattle. This loss was also caused by the illegal actions of the defendants.

46. In the actions described above the defendants knew or should have known that they could not seize William and Jack Myers' cattle without providing notice and opportunity to timely contest such action. Defendants proceeded to act in conscious or deliberate disregard of the Myers' rights with knowledge that it would cause injury to them. These actions justify a claim for punitive damages as well as actual damages.

47. Plaintiffs are entitled to recover their attorney fees pursuant to 42 U.S.C. 1988.

48. The actions described above also constitute a Montana state law claim of conversion, since the defendants intentionally deprived Myers of their rightful possession of their cattle and sold the Myers' cattle in order to fund their own costs for an unsuccessful criminal prosecution.

49. At all times relevant hereto, the defendants acted with malice, recklessness and total and deliberate disregard to the contractual and personal rights of Myers.

50. The actions described above justify a claim for damages and punitive damages in amounts to be proven at trial.

51. Plaintiffs demand a trial by jury.

WHEREFORE, plaintiffs demand trial by jury and judgment against defendants in their individual and official capacities as follows:

    a.    for compensatory damages in amounts to be determined at trial;

    b.    for punitive damages in amounts to be determined at trial;

    c.    for costs and expenses against the defendants; and

    d.    for whatever further relief that the Court deems proper or as may become known through discovery.

DATED this 20th day of May, 2024

/s/D. Michael Eakin
D. Michael Eakin
Attorney at Law

/s/ Jack E. Sands
Jack E. Sands
Sands Law Office

**Certificate of Service**

I certify that the foregoing document was served by CM-ECF on the Clerk of Court on May, ___, 2024.

/s/ Jack E. Sands, Sands Law Office