IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
BILLINGS DIVISION

| | |
|---|---|
| ESTATE OF WILLIAM MYERS, by and through Laine Myers as Personal Representative and JACK MYERS,<br><br>Plaintiffs,<br><br>vs.<br><br>CHARLES E. KEM, Sheriff of Stillwater County, Montana; NANCY RHODE, Stillwater County Attorney; DAVID[1] BRYAN ROE, Elite Bovine Veterinarian Service; and TRAVIS ELINGS, Montana Department of Livestock,<br><br>Defendants. | CV-24-56-BLG-SPW<br><br>ORDER ON NANCY RHODE'S, TRAVIS ELINGS'S, AND THE STATE OF MONTANA'S MOTION TO DISMISS |

On May 21, 2024, Plaintiffs William Myers[2] and Jack Myers (the "Myerses") filed this action against the Defendants Charles E. Kem, Nancy Rhode, Dr. Daniel Bryan Roe, and Travis Elings, alleging: (1) a § 1983 claim for

---

[1] The Myerses inaccurately identify Dr. Roe as "David Bryan Roe." Dr. Roe's first name is Daniel. (Doc. 12 at 1). This misnomer, however, is not relevant to the instant Motion and Order.

[2] On March 28, 2025, the Myerses' counsel notified the Court that William Myers had died on February 4, 2025. (Doc. 20). Counsel filed a motion to substitute party on July 29, 2025. (Doc. 31). William Myers was substituted by the personal representative of his estate, Laine Myers. (Doc. 32).

1

deprivation of due process rights, (2) a Fifth Amendment takings claim, and (3) a supplemental state law conversion claim. (Doc. 1 ¶ 1).

Before the Court is Nancy Rhode's, Travis Elings's, and the State of Montana's[3] (collectively, the "Defendants") Motion to Dismiss (Doc. 9). The Defendants move to dismiss the Complaint pursuant to Federal Rules of Civil Procedure 12(b)(1), 12(b)(6), and 4(m). The Motion is fully briefed and ripe for the Court's review. (*See* Docs. 10, 24, 25).

For the following reasons, the Court grants the Defendants' Motion and dismisses the Myerses' Complaint.

## I. Background

The following facts are taken from the Myerses' Complaint, as well as orders and filings from the prior state court civil proceedings, for which the Court takes judicial notice.

In 2021, William Myers was the sole owner of Triple Tree Ranch (the "Ranch"). (Doc. 1 ¶ 9). William, and his son Jack lived on the Ranch where they

---

[3] The Myerses sue the Defendants "individually and in their *official* capacities." (Doc. 1 ¶ 2) (emphasis added). The Court interprets this clause to mean that the Myerses intended to sue the entity of which the officer is an agent. *Monell v. New York City Dep't of Social Services*, 436 U.S. 658, 690 n.55 (1978). "As long as the government entity receives notice and an opportunity to respond, an official-capacity suit is, in all respects other than name, to be treated as a suit against the entity." *Kentucky v. Graham*, 473 U.S. 159, 166 (1985). The Court presumes the State received notice since the Defendants responded on behalf of the State of Montana. (Docs. 9, 10). It follows that the claims here, insofar as they are against the Defendant officials in their official capacities, are only a duplication of the counts asserted against the State itself.

2

owned and cared for cattle. Jack helped care for his cattle, William's cattle, and some neighbors' cattle that grazed on the property.

On May 25, 2021, one of the Myerses' neighbors reported to Stillwater County Undersheriff Randy Smith that the Myerses' cattle were "not being cared for properly." (*Id.* ¶ 11). After observing and inspecting the cattle from a nearby county road, members from the Sheriff's office obtained a search warrant. On May 26, Undersheriff Smith presented the warrant to Jack and "told him if he interfered[,] he would be arrested or shot." (*Id.* ¶ 15). Stillwater County Sheriff's deputies, Stillwater County Attorney Nancy Rhode, veterinarian Dr. Daniel Roe, Montana Department of Livestock employee Travis Elings, and other state employees searched the Ranch and seized 63 cattle. The next day, an additional 399 cattle were seized from the Ranch and transported to Centana Feed Lot in Joliet, Montana. (*Id.* ¶ 17).

On June 3, the Myerses requested the return of their cattle from Nancy Rhode, but she denied the request. (*Id.* ¶ 24). Subsequently the Myerses sought assistance from Montana Attorney General Austin Knudson, who also denied their request, stating his office "does not provide direct supervision over the prosecution of local criminal matters." (*Id.* ¶ 25; Doc. 1-3). On June 21, the State, through Rhode, filed criminal charges against Jack in Stillwater District Court for Aggravated Animal Cruelty. (Doc. 1 ¶ 26); *See* Mont. Code Ann. § 45-8-217 (2021). Jack was arraigned

in front of Judge Wald and requested the return of his cattle, but the State objected. Before Judge Wald could consider Jack's request, he recused himself due to a conflict of interest.

On July 21, the State filed a civil "Animal Welfare Petition" and requested a "cost of care hearing" pursuant to Montana Code Annotated § 27-1-434. (Doc. 10-14). The petition and cost of care hearing is a civil remedy that may be filed by the prosecutor when law enforcement seizes a person's animals upon an alleged violation of offensive conduct toward the animals. Mont. Code Ann. § 27-1-434(1) (2021). The statute permits the court to consider the animal's disease, injury, or suffering, to determine whether the animal should be released to the owner or held and cared for by the county. *Id.* § 27-1-434(5).

Substitute Judge Rieger held a hearing on July 28 to address Jack's request for the cattle's return and the merits of the Animal Welfare Petition. At the hearing, Judge Rieger heard testimony from Dr. Roe, William Myers, and a second veterinarian testifying on behalf of the Myerses. On August 2, Judge Rieger filed a Findings of Fact, Conclusions of Law and Order. (Doc. 10-18). She granted the State's Animal Welfare Petition and ordered Stillwater County to hold and care for the cattle pending disposition of Jack's criminal proceedings. She ordered the Myerses to post a $21,000 bond to cover the expenses the County expected to incur from caring for the cattle for 30 days. (*Id.* at 8). After the Myerses were unable to

post bond, the State moved to forfeit the cattle to the County. (*Id.*). The Myerses agreed to forfeit and sell the cattle to help reduce costs, while reserving the right to challenge the forfeiture later. (Doc. 1 ¶ 33; Doc. 10-20). Judge Rieger signed the forfeiture order on September 10, 2021. (Doc. 10-21).

In February 2022, the State held a criminal jury trial against Jack on his Aggravated Animal Cruelty charge. The jury was unable to reach a verdict leading to a mistrial. Jack requested a new judge, and Judge Luke Berger replaced Judge Rieger. Ultimately, the State dismissed the criminal charges against Jack without prejudice. (Doc. 10-29).

In November 2022, Jack sought monetary relief from the State pursuant to the civil statutory scheme governing the Animal Welfare Petition. (Doc. 10-30). According to the statute, if a person is found "not guilty" after the final disposition of a criminal proceeding, then the county must pay the person the fair market value of the animal seized. Mont. Code Ann. § 27-1-434(7)(b)(ii). Jack argued that the jury found him "not guilty" for the Aggravated Abuse charges and demanded repayment. (Doc. 1 ¶ 38). The State countered that because the proceeding ended in a mistrial, Jack's guilt was never determined and thus, the State should not have to repay. The parties briefed the issue in front of Judge Berger who found Jack was not entitled to monetary relief. (Doc. 10-33 at 5). Judge Berger filed his order and dismissed the claim on December 7, 2022. (*Id.*).

Based on the foregoing, the Myerses bring three causes of actions against the Defendants. First, the Myerses assert a claim under 42 U.S.C. § 1983, alleging that the Defendants' seizure of the cattle without "timely post seizure hearings" denied the Myerses' due process rights guaranteed by the Fourteenth Amendment of the U.S. Constitution and Article II, Section 17[4] of the Montana Constitution. (Doc. 1 ¶¶ 43–44). Second, the Myerses assert a takings claim under the Fifth Amendment, through the Fourteenth Amendment, of the U.S. Constitution alleging that the Defendants' actions deprived the Myerses of their cattle without due process of law and without just compensation.[5] (*Id.* ¶ 2). Third, the Myerses assert a state law conversion claim, alleging the Defendants intentionally deprived the Myerses of their rightful possession of the cattle and sold the Myerses' cattle to fund the costs of the unsuccessful criminal prosecution.[6] (*Id.* ¶ 48). The Myerses seek actual monetary damages for the loss of the cattle as well as punitive damages for the

---

[4] The Myerses inaccurately cite to Article II, Section 14 of the Montana Constitution. Section 14 provides for adult rights to persons 18 years or older. Article II, Section 17 provides persons the with the right to due process of law.

[5] The takings claim is not asserted in the "Causes of Action" section of the Myerses' Complaint. However, the Myerses "assert a 14th Amendment takings claim" on page 2 of the Complaint. (Doc. 1 ¶ 1). Though inartfully pled, the Court will assume that the Myerses allege an unlawful taking under the Fifth Amendment, which is made applicable to the states through the Fourteenth Amendment's Due Process Clause.

[6] The Myerses do not cite a Montana code section in the Complaint. Thus, for purposes of this Order, the Court assumes the Myerses allege a violation of Montana Code Annotated § 27-1-320.

Defendants' malicious, reckless, and total disregard of the Myerses' rights. (*Id.* ¶ 45, 46). The Myerses request no injunctive relief.

The Defendants move to dismiss the Complaint on several grounds: (1) failure to state a claim because the claims are barred by collateral estoppel; (2) lack of subject matter jurisdiction under the *Rooker-Feldman* doctrine; (3) failure to state a legally cognizable claim upon which relief can be granted; and (4) failure to timely serve the Complaint. (Docs. 9, 10, 25).

The Court finds several defects in the Myerses' Complaint warranting dismissal, however, will narrow its focus to the Complaint's two most fatal flaws. First, to the extent the Myerses seek to sue the State by naming state officers in their official capacities, the Myerses are barred by the Eleventh Amendment because the Myerses seek only retroactive damages that would be paid from the state treasury. *Edelman v. Jordan*, 415 U.S. 651, 659 (1974); *Blaycock v. Schwinden*, 862 F.2d 1352, 1353 (9th Cir. 1988) ("[A] suit against state officials that seeks retroactive money damages, to be paid from the state treasury, is barred by the eleventh amendment as a suit against the state."). Thus, the Myerses' claims against the State and the Defendants in their official capacity fail as a matter of law and will be dismissed.

Second, as to the Defendants in their personal capacities, the Myerses' claims are barred by collateral estoppel. The Court discusses its reasoning below.

7

## II. Legal Standard

A Rule 12(b)(6) motion tests the legal sufficiency of a pleading. *Navarro v. Block*, 250 F.3d 729, 739 (9th Cir. 2001). To survive a 12(b)(6) motion, the complaint must contain "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is plausible if the complaint alleges enough facts to draw a reasonable inference that the accused is liable. *Id.* Though the complaint does not need to provide detailed factual allegations, it cannot merely assert legal conclusions. *Twombly*, 550 U.S. at 555.

When ruling on a 12(b)(6) motion, a court must accept the complaint's well-pled factual allegations as true and construe them in the light most favorable to the non-movant. *Usher v. City of Los Angeles*, 828 F.2d 556, 561 (9th Cir. 1987). Dismissal "is appropriate only where the complaint lacks a cognizable legal theory or sufficient facts to support a cognizable legal theory." *Mendiondo v. Centinela Hosp. Med. Ctr.*, 521 F.3d 1097, 1104 (9th Cir. 2008).

In general, a court may not consider materials outside the complaint in ruling on a motion to dismiss under Rule 12(b)(6). *Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 998 (9th Cir. 2018). If a court does consider documents outside the pleadings, a Rule 12(b)(6) motion generally must be converted to a motion for summary judgment. Fed. R. Civ. P. 12(d). When the basis for the motion to dismiss

is collateral estoppel, however, the court may consider orders and other materials in the record from the prior litigation to adjudicate the motion. *See Holder v. Holder*, 305 F.3d 854, 866 (9th Cir. 2002).

### III. Discussion

Pursuant to Rule 12(b)(6), the Defendants argue that the Myerses' claims are barred by collateral estoppel because the seizure and forfeiture of the cattle were "condoned pursuant to valid State District Court orders." (Doc. 10 at 21). The Myerses contend that because Jack's criminal charges were dismissed without prejudice and the Animal Welfare Petition was interlocutory, the district court orders were not final. (Doc. 24 at 6–7). The Myerses also argue that they did not have a full and fair opportunity to defend the Animal Welfare Petition because there was no jury. (*Id.* at 6).

Collateral estoppel prevents a party from relitigating the same issue decided in a prior judgment. *Baltrusch v. Baltrusch*, 130 P.3d 1267, 1273–74 (Mont. 2006). Federal courts must give state court judgments the same preclusive effect "that the judgment would be given by the courts of the state in which the judgment was rendered." *Leonard v. Doyle*, CV 12-25-M, 2013 WL 4875033, at *4 (D. Mont. Sept. 11, 2013). "In determining the collateral estoppel effect of a state court judgment, federal courts must, as matter of full faith and credit, apply that state's law of collateral estoppel." *Bugna v. McArthur*, 33 F.3d 1054, 1057 (9th Cir. 1994)

9

(citing 28 U.S.C. § 1738; *Kremer v. Chem. Constr. Corp.*, 456 U.S. 461, 481–82 (1982)).

Accordingly, in Montana, collateral estoppel applies when:

(1) the identical issue raised was previously decided in a prior adjudication; (2) a final judgment on the merits was issued in the prior adjudication; (3) the party against whom the plea is asserted was a party or in privity with a party to the prior adjudication; and (4) the party against whom preclusion is now asserted was afforded a full and fair opportunity to litigate the issue.

*Poplar Elementary Sch. Dist. No. 9 v. Froid Elementary Sch. Dist. No. 65*, 471 P.3d 57, 66 (Mont. 2020).

Here, the Myerses apparently concede the first and third elements because they fail to address the Defendants' arguments that the identical issue was previously decided or that they were parties in the prior state proceedings. *See e.g.*, *Johnson v. Macy*, 145 F. Supp. 3d 907, 917–18 (C.D. Cal. 2015). Therefore, the Court will only consider the parties' arguments regarding the second and fourth elements: whether a final judgment was issued and whether the Myerses were afforded a full and fair opportunity to litigate the issue.

A. *Final Judgment*

The Defendants argue that Judge Rieger's order granting the Animal Welfare Petition ("Judge Rieger's Order") and Judge Berger's order denying the Meyeres' motion to recover value for their cattle ("Judge Berger's Order") constitutes a final judgment on the merits. (Doc. 10 at 24; *see* Docs. 10-18, 10-33). The Myerses

10

counter that the Animal Welfare Petition does not qualify as a final decision because it was interlocutory. Further, the Myerses argue that because Montana does not apply collateral estoppel when a case is dismissed without prejudice, Jack's criminal case cannot be considered final. (Doc. 24 at 6).

As an initial matter, the outcome of Jack's criminal case has no bearing on the Court's analysis. Though the Animal Welfare Petition and cost of care hearing arose out of Jack's criminal charges, the prosecutor must file the action for the Petition and the cost of care hearing pursuant to Title 27, "Civil Liability, Remedies, and Limitations." Mont. Code Ann. § 27-1-434. After the petition is filed, the state district court is bound by the procedure outlined in the civil statute. It follows then that Montana's statutory scheme governing the Animal Welfare Petition and cost of care hearing is a civil remedy and process independent of the criminal proceedings. Nevertheless, the Myerses argue that Jack's criminal proceeding was the "only action in state court." (*See* Doc. 24 at 5). To their point, the Defendants admit and the state court documents show, that the state district court did not clearly delineate between the civil case filings and the criminal case filings in the caption. However, the Court agrees with the Defendants that "the substance of the filings make clear which case they involve." (Doc. 25 at 2, n.2; Docs. 10-18, 10-33). Thus, for purposes of the finality element, the Court will consider only the state court orders

11

filed pursuant to Montana's civil statutory framework governing the cost of care of animals seized in animal cruelty cases. Mont. Code. Ann. § 27-1-434.

In determining whether there has been a final judgment on the merits, the court must look to see "if the issue was actually litigated and adjudged as shown on the face of the judgment." *Gibbs v. Altenhofen*, 330 P.3d 458, 466 (Mont. 2017) (citations omitted). In *Baltrusch v. Baltrusch*, the Montana Supreme Court adopted a "relaxed requirement of finality for purposes of applying collateral estoppel." 130 P.3d 1267, 1275 (Mont. 2006). The court relied on a set of factors from the Restatement (Second) of Judgments to determine whether the judgment was sufficiently final. These factors include:

> (1) Whether the prior decision was adequately deliberated and firm and not avowedly tentative; (2) Whether the parties were fully heard; (3) Whether the court supported its decision with a reasoned opinion; [and] (4) Whether the court's prior decision was subject to appeal or was in fact reviewed on appeal.

*Id.* at 1276 (citing *Greenleaf v. Garlock*, 174 F.3d 352, 358 (3rd Cir. 1999) (citing Restatement (Second) of Judgments § 13)).

Far from being "avowedly tentative," Judge Rieger's and Judge Berger's Orders evince "careful and adequate deliberation" and represent the court's attempt to firmly resolve the issues with a reasoned opinion. *See id.* at 1293. For example, Judge Rieger's Order sets forth 18 factual findings and draws 12 conclusions of law before granting the State's Animal Welfare Petition and ordering that Stillwater County hold and care for the cattle pending disposition of Jack's criminal

proceeding. (Doc. 10-18 at 7). Guided by the instructions found in Montana's statutory Animal Welfare Petition scheme, Judge Rieger considered the extent of the animal's disease, injury, and suffering before making her determination. Mont. Code Ann. § 27-1-434(5). She also considered testimony from: veterinarian Dr. Roe, who assisted in the search of the Ranch; veterinarian Dr. Peterson, who testified on behalf of the Myers; and William Myers, who testified on behalf of himself and Jack. Ultimately, she granted the State's Welfare Petition. Likewise, upon the disposition of Jack's criminal proceedings, Judge Berger issued a five-page order analyzing whether Stillwater County owed Jack the fair market value of the cattle after they had been sold and after the State dropped the criminal charges. Judge Berger "dismissed" the claim finding that the Myerses were not entitled to the cost of the cattle, again, pursuant to Montana's statutory Animal Welfare Petition scheme. (Doc. 10-33 at 5). Like Judge Rieger's Order, Judge Berger firmly resolved the issues through a reasoned written opinion.

Moreover, the parties were fully heard on the issue. In addition to attending the cost of care hearing, the Myerses admit they "fully attended every hearing [and] provided timely briefing in every instance." (Doc. 24 at 9). Not only did the Myerses have the benefit of a hearing in front of Judge Rieger, but they also stipulated to the transfer of the cattle and fully briefed recouperation costs in front

of Judge Berger—all of which provided them ample opportunity to testify, advocate, and argue their case. As such, the Myerses were fully heard on the issues.

Finally, Judge Rieger's Order and Judge Berger's Order were subject to appeal. Judge Rieger's Order was appealable because it required the Myerses to post a bond for the cattle's care and directed them to surrender their cattle to Stillwater County. According to Montana Rule of Appellate Procedure 6(3)(e) and (h), an aggrieved party in a civil case may appeal from an order that is the court's final decision on the matter, such as granting or refusing an attachment or directing the "transfer or surrender of property." Thus, the attachment of the bond and the cattle's forfeiture would each have qualified as appealable matters.

Following Jack's criminal proceedings, the Myerses pursued one final remedy under the civil statute and sought to recover the costs of their cattle. *See* Mont. Code. Ann. § 27-1-434(7). Judge Berger's Order disagreeing with and dismissing the claim effectively ended the civil action because it conclusively determined the parties' rights and settled the claim. (Doc. 10-33 at 5); *see Farmers Union Mut. Ins. Co. v. Bodell*, 197 P.3d 913, 916 (Mont. 2008); Mont. Rule App. P. 4 (a "final judgment conclusively determines" the parties' rights and "settles all claims," including costs and attorney fees). Though the Court is unaware of a judgment awarding costs or fees, the Court sees no reason why the Myerses could not have appealed Judge Berger's Order after they pursued the final statutory remedy and lost.

Notably, the Myerses acknowledge this point in their Complaint. They state: "[r]ather than appeal Judge Berger's decision . . . this action was filed." (Doc. 1 ¶ 41). While the Myerses are not required to exhaust state court remedies to bring a § 1983 action, this statement alone demonstrates the Myerses' acknowledgment that Judge Berger's Order was subject to appeal.

Based on the preceding factors, the Court finds that Judge Rieger's and Judge Berger's Orders are sufficiently final for purposes of applying the doctrine of collateral estoppel.

### B.   Full and Fair Opportunity to Litigate

Next, the Defendants argue that the Myerses had a full and fair opportunity to litigate the issues raised in the previous case. "The burden is on the party attempting to defeat the application of collateral estoppel to establish the absence of a full and fair opportunity to litigate." *Adams v. Two Rivers Apartments, LLLP*, 444 P.3d 415, 421 (Mont. 2019). "That the party failed to raise certain defenses in the prior suit 'does not necessarily mean that the party has been denied a full and fair opportunity to litigate the issue to be barred.'" *Shelton v. Dep't of Pub. Health and Hum. Servs.*, 567 P.3d 285, 295 (Mont. 2025) (quoting *McDaniel v. Montana*, 208 P.3d 817, 829 (Mont. 2009)). The Myerses have not met their burden here.

The Myerses first argue they were not given a full and fair opportunity to litigate because the Animal Welfare Petition was filed "within the criminal case,"

implying they were not formally served with the civil forfeiture action. (Doc. 24 at 5–6; Doc. 25 at 5–6). Second, the Myerses argue they were not afforded a jury trial, and therefore, they were deprived of a full and fair opportunity to defend against the Animal Welfare Petition. (Doc. 24 at 6). As discussed above, Jack's criminal case has no bearing on the Court's analysis. For the purposes of applying the full and fair opportunity to litigate element, the Court considers only the state court civil judgments filed pursuant to Montana Code Annotated § 27-1-434 ("Cost of care of animals seized in animal cruelty and animal fighting cases").

First, the Myerses were properly served with notice of the Animal Welfare Petition. The Petition was served upon the Myerses' counsel, Jack Sands, on July 21, 2021. (Doc. 10-14 at 7). Second, the opportunity to be heard element does not hinge on the presence of a jury trial. There are numerous examples where the Montana Supreme Court upheld the application of collateral estoppel based on findings made during hearings other than jury trials. *E.g.*, *Shelton*, 567 P.3d at 295–96 (Montana Supreme Court upheld collateral estoppel doctrine based on an evidentiary hearing in Utah courts); *Dowell v. Mont. Dept. of Pub. Health and Hum. Servs.*, 132 P.3d 520, 527 (Mont. 2006) (plaintiff had a full and fair opportunity to litigate when she was present at a hearing regarding DPHHS's petition for temporary legal custody, not a jury trial); *Adams*, 444 P.3d 415 at 421–22 (Montana Supreme Court upheld collateral estoppel doctrine based on litigation and ultimate settlement

16

of the previous case). The Court is unpersuaded by the Myerses' arguments and concludes that collateral estoppel applies even when the prior adjudication occurred without a jury.

The Court underscores the fact that the Animal Welfare Petition proceedings provided the Myerses with meaningful opportunity to address the issues and ample opportunity to be heard. They submitted evidence and testimony in front of Judge Rieger. (Docs. 10-11, 10-15, 10-17). They had opportunity to confer with opposing counsel. (Doc. 10-20). And they had an opportunity to make claims against the County and argue in front of Judge Berger. (Docs. 10-30, 10-32). In sum, the Myerses have not met their burden of establishing the absence of a full and fair opportunity to litigate. The final element of collateral estoppel is therefore satisfied.

Provided the Court's findings and the Myerses' failure to dispute the remaining two collateral estoppel elements, the Myerses are collaterally estopped from litigating their claims. Accordingly, the Court will not reach the merits of the Defendants' alternative arguments for dismissal.

C.   *Leave to Amend*

Because collateral estoppel bars this action, amending the Myerses' Complaint would be futile. *Bly-Magee v. California*, 236 F.3d 1014, 1019 (9th Cir. 2001) (Leave to amend should be granted unless the pleading "could not possibly be cured" by the allegation of other facts.). The core of the Myerses' claims involve

17

allegations that State and County employees entered the Ranch, removed, and sold their cattle without timely post seizure hearings, and that the cattle were sold without a way to recover costs. These issues were argued, defended, and litigated in state court. "Rather than appeal Judge Berger's decision," the Myerses declare they are "emotionally and financially drained by" state proceedings. (Doc. 1 ¶ 12). Be that as it may, refiling in federal court does not give the Myerses a free pass to retry an issue already decided. The Court dismisses the Complaint without leave to amend.

## IV.  Conclusion

The Myerses are barred by the Eleventh Amendment to sue the Defendants in their official capacities. Further, all elements of collateral estoppel—two of which are undisputed by the Myerses—are met. Therefore, any claims the Myerses have against Defendants in their personal capacities are collaterally estopped.

IT IS HEREBY ORDERED that Defendants Nancy Rhode's, Travis Elings's, and the State of Montana's Motion to Dismiss (Doc. 9) is GRANTED. This matter is dismissed with prejudice, and the Clerk of Court shall close the case as to these Defendants.

DATED this 15th day of August, 2025.

Susan P. Watters
SUSAN P. WATTERS
United States District Judge