IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
BILLINGS DIVISION

|  |  |
|---|---|
| ESTATE OF WILLIAM MYERS, by and through Laine Myers as Personal Representative and JACK MYERS,<br><br>Plaintiffs,<br><br>vs.<br><br>CHARLES E. KEM, Sheriff of Stillwater County, Montana; NANCY RHODE, Stillwater County Attorney; DAVID[1] BRYAN ROE, Elite Bovine Veterinarian Service; and TRAVIS ELINGS, Montana Department of Livestock,<br><br>Defendants. | CV-24-56-BLG-SPW<br><br><br>ORDER ON CHARLES E. KEM'S MOTION TO DISMISS |

On May 21, 2024, Plaintiffs William Myers[2] and Jack Myers (the "Myeres")

filed this action against the Defendants Charles E. Kem, Nancy Rhode, Dr. Daniel

Bryan Rhode, and Travis Elings, alleging: (1) a § 1983 claim for deprivation of due

---

[1] The Meyers inaccurately identify Dr. Roe as "David Bryan Roe." Dr. Roe's first name is "Daniel." (Doc. 12 at 1). This misnomer, however, is not relevant to the instant Motion and Order.

[2] On March 28, 2025, the Myeres' counsel notified the Court that William Myers had died on February 4, 2025. (Doc. 20). Counsel filed a motion to substitute party on July 29, 2025. (Doc. 31). William Myers was substituted by the personal representative of his estate, Laine Myers. (Doc. 32).

process rights, (2) a Fifth Amendment takings claim, and (3) a supplemental state law conversion claim. (Doc. 1 ¶ 1).

Before the Court is Charles E. Kem's Motion to Dismiss for Failure to State a Claim (Doc. 13). Kem moves to dismiss the Complaint pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). The Motion is fully briefed and ripe for the Court's review. (*See* Docs. 14, 24, 26).

For the following reasons, the Court grants Kem's Motion and dismisses the Complaint.

## I.    Background

The following facts are taken from the Myerses' Complaint and the search warrant (Doc. 14-1) provided by Kem of which the Court takes judicial notice.[3]

In 2021, William Myers was the sole owner of Triple Tree Ranch (the "Ranch"). (Doc. 1 ¶ 9). William, and his son Jack lived on the Ranch where they owned and cared for cattle. Jack helped care for his cattle, William's cattle, and some neighbors' cattle that grazed on the property.

---

[3] "Judicial notice under Rule 201 permits a court to notice an adjudicative fact if it is 'not subject to reasonable dispute.'" *Khoja v. Orexian Therapeutics, Inc.*, 899 F.3d 988, 999 (9th Cir. 2018); Fed. R. Evid. 201(b). A fact is "not subject to reasonable dispute" if it is "generally known," or "can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b)(1)–(2). Accordingly, "[a] court may take judicial notice of matters of public record without converting a motion to dismiss into a motion for summary judgment." *Lee v. City of Los Angeles*, 250 F.3d 668, 688 (9th Cir. 2001).

On May 25, 2021, one of the Myerses' neighbors reported to Stillwater County Undersheriff Randy Smith that the Myerses' cattle were "not being cared for properly." (*Id.* ¶ 11). After observing and inspecting the cattle from a nearby county road, members from the Sheriff's office obtained a search warrant. On May 26, Undersheriff Smith presented the warrant to Jack and "told him if he interfered[,] he would be arrested or shot." (*Id.* ¶ 15). Stillwater County Sheriff's deputies, Stillwater County Attorney Nancy Rhode, veterinarian Dr. Daniel Roe, Montana Department of Livestock employee Travis Elings, and other state employees searched the Ranch and seized 63 cattle. The next day, an additional 399 cattle were seized from the Ranch and transported to Centana Feed Lot in Joliet, Montana. (*Id.* ¶ 17). According to the Myerses, Sheriff Kem "involuntarily placed" the cattle at Centana Lot. (*Id.* ¶ 21).

On June 3, the Myerses requested the return of their cattle from Nancy Rhode, but she denied the request. (*Id.* ¶ 24). Subsequently the Myerses sought assistance from Montana Attorney General Austin Knudson, who also denied their request, stating his office "does not provide direct supervision over the prosecution of local criminal matters." (*Id.* ¶ 25; Doc. 1-3). On June 21, the State, through Rhode, filed criminal charges against Jack in Stillwater District Court for Aggravated Animal Cruelty. (Doc. 1 ¶ 26); *See* Mont. Code Ann. § 45-8-217 (2021). Jack was arraigned in front of Judge Wald and requested the return of his cattle, but the State objected.

Before Judge Wald could consider Jack's request, he recused himself due to a conflict of interest.

On July 21, the State filed a civil "Animal Welfare Petition" and requested a "cost of care hearing." (*Id.* ¶ 31). The petition and cost of care hearing is a civil remedy that may be filed by the prosecutor when law enforcement seizes a person's animals upon an alleged violation of offensive conduct toward the animals. Mont. Code Ann. § 27-1-434(1). The statute permits the court to consider the animal's disease, injury, or suffering, to determine whether the animal should be released to the owner or held and cared for by the county. *Id.* § 27-1-434(5).

Substitute Judge Rieger held a hearing on July 28 to address Jack's request for the cattle's return and the merits of the Animal Welfare Petition. (*Id.*). Judge Rieger granted the State's Animal Welfare Petition and ordered Stillwater County to hold and care for the cattle pending disposition of Jack's criminal proceedings. (*Id.* ¶ 32). When the Myerses were unable to pay costs for the cattle's care, the State moved to forfeit the cattle to the County. (*Id.* ¶ 33). The Myerses agreed to forfeit the cattle, and allowed the cattle's sale to help reduce costs, while reserving the right to challenge the forfeiture later. (*Id.*).

In February 2022, the State held a criminal jury trial against Jack on his Aggravated Animal Cruelty charge. The jury was unable to reach a verdict leading to a mistrial. (*Id.* ¶ 34–36). Jack requested a new judge, and Judge Luke Berger

replaced Judge Rieger. (*Id.* ¶ 37). Ultimately, the State dismissed the criminal charges against Jack without prejudice. (*Id.* ¶ 40).

In November 2022, Jack sought monetary relief from the State pursuant to the civil statutory scheme governing the Animal Welfare Petition. (*Id.* ¶¶ 37, 39 ). According to the statute, if a person is found "not guilty" after the final disposition of a criminal proceeding, then the county must pay the person the fair market value of the animal seized. Mont. Code Ann. § 27-1-434(7)(b)(ii). Jack argued that the jury found him "not guilty" for the Aggravated Abuse charges and demanded repayment. (Doc. 1 ¶ 38). The State countered that because the proceeding ended in a mistrial, Jack's guilt was never determined and thus, the State should not have to repay. The parties briefed the issue in front of Judge Berger who found Jack was not entitled to monetary relief. (*Id.* ¶ 39). Judge Berger filed his order and dismissed the claim on December 7, 2022. (*Id.*).

Based on the foregoing, the Myerses bring three causes of actions against Kem and the other Defendants. First, the Myerses assert a claim under 42 U.S.C. § 1983, alleging that Kem's seizure of the cattle without "timely post seizure hearings" denied the Myerses' due process rights guaranteed by the Fourteenth Amendment of the U.S. Constitution and Article II, Section 17[4] of the Montana Constitution. (*Id.*

---

[4] The Myerses inaccurately cite to Article II, Section 14 of the Montana Constitution. Section 14 provides for adult rights to persons 18 years or older. Article II, Section 17 provides persons the with the right to due process of law.

¶¶ 43–44). Second, the Myerses assert a claim under the Fifth Amendment, through the Fourteenth Amendment, of the U.S. Constitution alleging that Kem's actions deprived the Myerses of their cattle without due process of law and without just compensation.[5] (*Id.* ¶ 2). Third, the Myerses assert a state law conversion claim, alleging Kem intentionally deprived the Myerses of their rightful possession of the cattle and sold the Myerses' cattle to fund the costs of the unsuccessful criminal prosecution.[6] (*Id.* ¶ 48). The Myerses seek actual monetary damages for the loss of the cattle as well as punitive damages for Kem's malicious, reckless, and total disregard of the Myerses' rights. (*Id.* ¶¶ 45, 46). The Myerses request no injunctive relief.

Kem moves to dismiss the Complaint on the grounds that: (1) his qualified immunity as Sheriff bars the Myerses from bringing § 1983 claims against him; (2) the Myerses fail to state a takings and conversion claim upon which relief can be granted; (3) the Myerses lack subject matter jurisdiction under the *Rooker-Feldman* doctrine; and (4) the Myerses failed to timely serve the Complaint pursuant to Rule 4. (Docs. 13, 14, 26).

---

[5] The takings claim is not asserted in the "Causes of Action" section of the Myeres' Complaint. However, the Myerses "assert a 14th Amendment takings claim" on page 2 of the Complaint. (Doc. 1 ¶ 1). Though inartfully pled, the Court will assume that the Myerses allege an unlawful taking under the Fifth Amendment, which is made applicable to the states through the Fourteenth Amendment's Due Process Clause.

[6] The Myerses do not cite a Montana code section in the Complaint. Thus, for purposes of this Order, the Court assumes the Myerses allege a violation of Montana Code Annotated § 27-1-320.

The Court finds several defects in the Myerses' Complaint warranting dismissal, however, will narrow its focus to the Complaint's two most fatal flaws. First, to the extent the Myerses seek to sue the county government by naming Sheriff Kem in his official capacity, the Myerses have failed to state a § 1983 claim pursuant to *Monell v. Department of Social Services*, 436 U.S. 658 (1978). A local government may be sued only when a policy or custom causes the plaintiff's violation of a federal or constitutional right. *Id.* at 691. In other words, the local government's policy or custom "must be 'the moving force of the constitutional violation' in order to establish the liability of a government body under § 1983." *Polk Cnty. v. Dodson*, 454 U.S. 312, 326 (1981) (quoting *Monell*, 436 U.S. at 694). The Myerses fail to allege any such facts and therefore, the Myerses' § 1983 claim fails as a matter of law as to Kem in his official capacity.

Second, as to Kem in his personal capacity, the Court ultimately finds that the Myerses fail to plausibly allege sufficient facts to support a cognizable legal theory that withstands a Rule 12(b)(6) motion to dismiss. The Myerses' Complaint merely "recites a collection of general factual allegations at the outset but fails to connect those facts to the elements comprising [P]laintiff[s'] causes of action[.]" *Watt v. Antillen N.V.*, No. 2:24-cv-00155, 2024 WL 4436966, at *2 (W.D. Wash. Oct. 7, 2024). While there is no particular formula to survive a Rule 12(b)(6) motion, this complaint style is impermissible when it "denies defendants adequate notice of the

7

allegations supporting each cause of action." *Id.* Further, it goes beyond the Court's obligation to draw reasonable inferences in the Myerses' favor and forces the Court to "engage in guesswork to piece [a patchwork] puzzle together." *John Ketch LLC v. San Juan Cnty.*, 759 F. Supp. 3d 1121, 1131 (W.D. Wash. 2024). As detailed below, the Court does not reach the merits of each defense articulated by Kem, but nevertheless, dismisses each claim against him.

## II.    Legal Standard

A Rule 12(b)(6) motion tests the legal sufficiency of a pleading. *Navarro v. Block*, 250 F.3d 729, 739 (9th Cir. 2001). To survive a 12(b)(6) motion, the complaint must contain "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is plausible if the complaint alleges enough facts to draw a reasonable inference that the accused is liable. *Id.* Though the complaint does not need to provide detailed factual allegations, it cannot merely assert legal conclusions. *Twombly*, 550 U.S. at 555.

When ruling on a 12(b)(6) motion, a court must accept the complaint's well-pled factual allegations as true and construe them in the light most favorable to the non-movant. *Usher v. City of Los Angeles*, 828 F.2d 556, 561 (9th Cir. 1987). Dismissal "is appropriate only where the complaint lacks a cognizable legal theory

or sufficient facts to support a cognizable legal theory." *Mendiondo v. Centinela Hosp. Med. Ctr.*, 521 F.3d 1097, 1104 (9th Cir. 2008).

## III.    Discussion

### A.    42 U.S.C. § 1983 Claim – Violation of the Right to a Timely Post Seizure Hearing

Pursuant to Rule 12(b)(6), Kem argues that the Myerses fail to show that Kem personally violated a constitutional right that was clearly established at the time of the seizure. (Doc. 14 at 21). Because the Myerses have not met this burden, Sheriff Kem asserts that he is entitled to qualified immunity. The Court agrees.

To state a claim under § 1983, a plaintiff "must plead that (1) the defendants acted under the color of state law to (2) deprive plaintiffs of rights secured by the Constitution or federal statutes." *Gibson v. United States*, 781 F.2d 1334, 1338 (9th Cir. 1986). A person deprives another of a constitutional right "within the meaning of § 1983 'if he does an affirmative act, participates in another's affirmative act, or omits to perform an act which he is legally required to do that causes the deprivation of which complaint is made.'" *Preschooler II v. Clark Cnty. Sch. Bd. of Trs.*, 479 F.3d 1175, 1183 (9th Cir. 2007) (quoting *Johnson v. Duffy*, 588 F.2d 740, 743 (9th Cir. 1978)). The Myerses fail to meet the second prong because they do not link Kem's specific actions to the alleged constitutional violation.

The only facts the Myerses allege about Kem are as follows: (1) Sheriff Kem's deputies obtained a warrant, entered the Myerses' property and told Jack that "if he

9

interfered[,] he would be arrested or shot;" (2) Sheriff Kem never obtained an order authorizing the seizure or placement of the cattle; and (3) Sheriff Kem placed the cattle at the Centana feed lot without the Myerses knowing. (Doc. 1 ¶¶ 15, 19, 20).

The cattle were seized pursuant to a warrant on May 26 and 27, 2021, and the Myerses attended the Animal Welfare Petition hearing on July 28, 2021. It is unfortunate that the Myerses were unaware of the cattle's location during this time, and it is further concerning that law enforcement used threatening language when executing the warrant. However, these actions did not cause the two-month delay between the warrant's execution and when the court held the hearing. For this reason, the Myerses fail to plausibly plead a § 1983 claim as to Sheriff Kem because there is nothing linking him to the alleged violation of their right to a timely post-seizure hearing.

Furthermore, "[i]n § 1983 actions, qualified immunity protects government officials from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Sampson v. Cnty. of Los Angeles*, 947 F.3d 1012, 1018 (9th Cir. 2020) (citations and internal quotation marks omitted). "To determine whether qualified immunity applies, [a court] ask[s] whether (1) the plaintiff has plausibly alleged a violation of a constitutional right, and (2) the constitutional right was 'clearly established' at the time of the conduct at issue." *Id.* A constitutional right

10

is "clearly established" if "every reasonable official would have understood that what he is doing violates that right" at the time of his conduct. *Taylor v. Barkes*, 575 U.S. 822 (2015) (per curiam).

Kem argues that the Myerses fail to define the specific right at issue, and thus a reasonable sheriff would not have understood that his actions violated a constitutional right. (Doc. 14 at 20–21; Doc. 26 at 10–11). Though not specified in their Complaint, the Myerses respond that there are "cases establishing a clear constitutional right to a timely hearing after a taking." (Doc. 24 at 11). In their response brief, the Myerses cite to three U.S. Supreme Court cases involving state statutes that allowed parties to garnish wages or repossess household goods without prior hearing or notice. (Doc. 24 at 11 (citing *Sniadach v. Family Finance Corp. of Bay View*, 395 U.S. 337 (1969); *North Georgia Finishing, Inc. v. Di-Chem, Inc.*, 419 U.S. 601 (1975); *Fuentes v. Shevin*, 407 U.S. 67 (1983)). The Supreme Court invalidated each state statute, respectively, finding that absent notice and a prior hearing, the statutes violated the fundamental principles of due process. While notice and other due process protections apply in this case, the cited Supreme Court cases provide no instruction regarding a *timely* post-seizure hearing. The Court is not ignorant to the established right of a timely post-seizure hearing; however, the Myerses' fail to plead within such a legal framework. *See United States v. Von Neumann*, 474 U.S. 242, 247 (1986); *United States v. $8,850*, 461 U.S. 555, 562–65

11

(1985) (analyzing the reasonableness of a delayed post-seizure hearing). For this reason, the Myerses have not plausibly alleged a violation of a constitutional right.

Moreover, the Myerses offer no facts to support the "clearly established" prong of the qualified immunity test because no reasonable sheriff would have understood that permitting deputies to execute a valid warrant violated the Myerses' right to a timely post-seizure hearing. As far as the Myerses' plead, Kem's actions had no impact on the time it took for the prosecutor to file the Animal Welfare Petition or for the Court to hold a hearing. Likewise, Kem's actions neither hindered their right to a post-seizure hearing nor unjustifiably delayed any court proceeding. Thus, the Myerses fail to allege a plausible violation of the right to a timely post-seizure hearing and fail to establish that the right was "clearly established" at the time of alleged violation.

If "there is no constitutional violation, the inquiry ends and the officer is entitled to qualified immunity." *Ioane v. Hodges*, 939 F.3d 945, 950 (9th Cir. 2018). Kem is entitled to qualified immunity, and the Court dismisses the § 1983 claim because the Complaint lacks both a cognizable "legal theory [and] sufficient facts to support a cognizable legal theory" to withstand a Rule 12(b)(6) motion. *See Mendiondo*, 521 F.3d at 1104.

/ / /

/ / /

B.    *Fifth Amendment Takings Claim*

To state a claim under the Fifth Amendment's Takings Clause, the Myerses must show that the government took their property "for public use, without just compensation." U.S. Const. amend. V.   It is unclear whether the Myerses bring a cause of action under § 1983 for a Fifth Amendment violation or if the Fifth Amendment claim is pled on its own.   In either case, the Myerses fail to plausibly allege a violation of a constitutional right and thus, the claim fails under Rule 12(b)(6) and Kem is protected by qualified immunity.   *Sampson*, 947 F.3d at 1018.

Kem asserts that "neglected and malnourished cattle" seized pursuant to a valid search warrant do not constitute a taking as alleged by the Myerses.  (Doc. 14 at 20; Doc. 26 at 12).   The Court agrees.   It is firmly established that "[t]he government may not be required to compensate an owner for property, which it has already lawfully acquired under the exercise of governmental authority other than the power of eminent domain."  *Bennis v. Michigan*, 516 U.S. 442, 452 (1996). Because the Myerses' cattle were seized pursuant to a valid warrant, there was no Fifth Amendment takings violation.  *See Young v. Cnty. of Hawaii*, 578 Fed. Appx. 728, 729 (9th Cir. 2014).

However, the Myerses argue in their response brief that the "taking occurred when the cattle were sold[,] and the proceeds [were] used to pay a county bill." (Doc. 24 at 12).   These facts are not alleged in the Complaint.   Rather, the Myerses allege

that they "signed a stipulation allowing the forfeiture to proceed." (Doc. 1 ¶ 33). Even if some other process surrounding the stipulation qualified as a Fifth Amendment taking, the Myerses fail to connect Kem's actions with the forfeiture actions, and the Court will not engage in factual or legal guesswork on behalf of the Myerses.

Ultimately, the Myerses allege insufficient facts to support a violation of their Fifth Amendment rights and fail to set forth a cognizable legal theory that demonstrates why a lawful and otherwise voluntary forfeiture constitute a Fifth Amendment takings claim. And if "there is no constitutional violation, the inquiry ends and the officer is entitled to qualified immunity." *Ioane*, 939 F.3d at 950. Kem is entitled to qualified immunity, and the Court dismisses the Fifth Amendment claim because the Complaint lacks both a cognizable "legal theory [and] sufficient facts to support a cognizable legal theory" to withstand a Rule 12(b)(6) motion. *See Mendiondo*, 521 F.3d at 1104.

C.    *State Law Claims*

When a federal court dismisses all federal claims in a case, it cannot retain jurisdiction over any remaining state law claims. *Scott v. Pasadena Unified Sch. Dist.*, 306 F.3d 646, 664 (9th Cir.). Because the Myerses allegations arising under federal statute and the U.S. Constitution fail under Rule 12(b)(6), the Court declines to exercise supplemental jurisdiction over any state law or state constitutional

14

claims, including the state law claim for conversion. For this reason, the Court dismisses the state law claims.

### D.    Leave to Amend

Leave to amend should be granted unless the pleading "could not possibly be cured" by the allegation of other facts. *Bly-Magee v. California*, 236 F.3d 1014, 1019 (9th Cir. 2001). Granting the Myerses leave to amend their claims would be futile because their claims are barred by the doctrine of qualified immunity. *See Ransom v. Lee*, 2017 WL 10525951, at *16 (C.D. Cal. Apr. 20, 2017); *Robinson v. Cal. Bd. of Prison Terms*, 997 F. Supp. 1303, 1308 (C.D. Cal. 1998) ("Since plaintiff has not, and cannot, state a claim containing an arguable basis in law, this action should be dismissed without leave to amend; any amendment would be futile."). The Court likewise declines to grant the Myerses leave to amend the state law claims because the Court has no authority to exercise supplemental authority.

## IV.    Conclusion

In sum, the Myerses fail to allege a plausible legal theory to withstand a Rule 12(b)(6) motion to dismiss. First, they fail to allege a violation of a policy or custom to sue Kem in his official capacity. Second, Kem is entitled to qualified immunity as to the § 1983 claim and to the takings claim, to the extent it was alleged under § 1983. Third, the Myerses fail to plausibly allege facts and a legal theory to support

a Fifth Amendment takings claim.    Finally, the Court declines to exercise supplemental jurisdiction over the remaining state law claims.

Therefore, IT IS HEREBY ORDERED that Defendant Charles E. Kem's Motion to Dismiss (Doc. 13) is GRANTED.  This matter is dismissed with prejudice, and the Clerk of Court shall close the case as to this Defendant.

DATED this _15th_ day of August, 2025.

SUSAN P. WATTERS
United States District Judge

16