IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
BILLINGS DIVISION

| | |
|---|---|
| ESTATE OF WILLIAM MYERS, by and through Laine Myers as Personal Representative and JACK MYERS, | CV-24-56-BLG-SPW |
| Plaintiffs, | ORDER ON DANIEL BRYAN ROE'S MOTION TO DISMISS |
| vs. | |
| CHARLES E. KEM, Sheriff of Stillwater County, Montana; NANCY RHODE, Stillwater County Attorney; DAVID[1] BRYAN ROE, Elite Bovine Veterinarian Service; and TRAVIS ELINGS, Montana Department of Livestock, | |
| Defendants. | |

On May 21, 2024, Plaintiffs William Myers[2] and Jack Myers (the "Myerses")

filed this action against Defendants Charles E. Kem, Nancy Rhode, Dr. Daniel Bryan

Roe, and Travis Elings, alleging: (1) a § 1983 claim for deprivation of due process

---

[1] The Myerses inaccurately identify Dr. Roe as "David Bryan Roe." Dr. Roe's first name is "Daniel." (Doc. 12 at 1). Dr. Roe argues that this misnomer warrants a dismissal of the Complaint. The Court acknowledges Dr. Roe's argument but does not address his argument for reasons stated below.

[2] On March 28, 2025, the Myerses' counsel notified the Court that William Myers had died on February 4, 2025. (Doc. 20). Counsel filed a motion to substitute party on July 29, 2025. (Doc. 31). William Myers was substituted by the personal representative of his estate, Laine Myers. (Doc. 32).

rights, (2) a Fifth Amendment takings claim, and (3) a supplemental state law conversion claim. (Doc. 1 ¶ 1).

Before the Court is Dr. Daniel Bryan Roe's Motion to Dismiss for Failure to State a Claim. (Doc. 11). Dr. Roe moves to dismiss the Complaint pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). The Motion is fully briefed and ripe for the Court's review. (*See* Docs. 12, 24, 27).

For the following reasons, the Court grants Dr. Roe's Motion and dismisses the Complaint.

## I.    Background

The following facts are taken from the Myerses' Complaint.

In 2021, William Myers was the sole owner of Triple Tree Ranch (the "Ranch"). (Doc. 1 ¶ 9). William, and his son Jack lived on the Ranch where they owned and cared for cattle. Jack helped care for his cattle, William's cattle, and some neighbors' cattle that grazed on the property.

On May 25, 2021, one of the Myerses' neighbors reported to Stillwater County Undersheriff Randy Smith that the Myerses' cattle were "not being cared for properly." (*Id.* ¶ 11). After observing and inspecting the cattle from a nearby county road, members from the Sheriff's office obtained a search warrant. On May 26, Stillwater County Sheriff's deputies, Stillwater County Attorney Nancy Rhode, veterinarian Dr. Daniel Roe, Montana Department of Livestock employee Travis

2

Elings, and other state employees searched the Ranch and seized 63 cattle. The next day, an additional 399 cattle were seized from the Ranch and transported to Centana Feed Lot in Joliet, Montana. (*Id.* ¶ 17). According to the Myerses, Dr. Roe "arranged the trucking and the feed lot." (*Id.* ¶ 18).

On June 3, the Myerses requested the return of their cattle from Nancy Rhode, but she denied the request. (*Id.* ¶ 24). Subsequently the Myerses sought assistance from Montana Attorney General Austin Knudson, who also denied their request, stating his office "does not provide direct supervision over the prosecution of local criminal matters." (*Id.* ¶ 25; Doc. 1-3). On June 21, the State, through Rhode, filed criminal charges against Jack in Stillwater District Court for Aggravated Animal Cruelty. (Doc. 1 ¶ 26); *See* Mont. Code Ann. § 45-8-217 (2021). Jack was arraigned in front of Judge Wald and requested the return of his cattle, but the State objected. Before Judge Wald could consider Jack's request, he recused himself due to a conflict of interest.

On July 21, the State filed a civil "Animal Welfare Petition" and requested a "cost of care hearing." (*Id.* ¶ 31). The petition and cost of care hearing is a civil remedy that may be filed by prosecutor when law enforcement seizes a person's animals upon an alleged violation of offensive conduct toward animals. Mont. Code Ann. § 27-1-434(1). The statute permits the court to consider the animal's disease,

injury, or suffering, to determine whether the animal should be released to the owner or held and cared for by the county. *Id.* § 27-1-434(5).

Substitute Judge Rieger held a hearing on July 28 to address Jack's request for the cattle's return and the merits of the Animal Welfare Petition. (*Id.*). Judge Rieger granted the State's Animal Welfare Petition and ordered Stillwater County to hold and care for the cattle pending disposition of Jack's criminal proceedings. (*Id.* ¶ 32). When the Myerses were unable to pay costs for the cattle's care, the State moved to forfeit the cattle to the County. (*Id.* ¶ 33). The Myerses agreed to forfeit the cattle, and allowed the cattle's sale to help reduce costs, while reserving the right to challenge the forfeiture later. (*Id.*).

In February 2022, the State held a criminal jury trial against Jack on his alleged Aggravated Animal Cruelty charge. The trial ended in a mistrial because the jury was unable to reach a verdict. (*Id.* ¶ 34–36). Jack requested a new judge, and Judge Luke Berger replaced Judge Rieger. (*Id.* ¶ 37). The State later dismissed the criminal charges without prejudice. (*Id.* ¶ 40).

In November 2022, Jack sought monetary relief from the State pursuant to the civil statutory scheme governing the Animal Welfare Petition. (*Id.* ¶¶ 37, 39 ). According to the statute, if a person is found "not guilty" after the final disposition of a criminal proceeding, then the county must pay the person the fair market value of the animal seized. Mont. Code Ann. § 27-1-434(7)(b)(ii). Jack argued that the

jury found him "not guilty" for the Aggravated Abuse charges and demanded repayment. (Doc. 1 ¶ 38). The State countered that because the proceeding ended in a mistrial, Jack's guilt was never determined and thus, the State should not have to repay. The parties briefed the issue in front of Judge Berger who found Jack was not entitled to monetary relief. (*Id.* ¶ 39). Judge Berger filed his order and dismissed the claim on December 7, 2022. (*Id.*).

Based on the foregoing, the Myerses bring three causes of actions against Dr. Roe and the other Defendants. First, the Myerses assert a claim under 42 U.S.C. § 1983, alleging that Dr. Roe's seizure of the cattle without "timely post seizure hearings" denied the Myerses' due process rights guaranteed by the Fourteenth Amendment of the U.S. Constitution and Article II, Section 17[3] of the Montana Constitution. (*Id.* ¶¶ 43–44). Second, the Myerses assert a claim under the Fifth Amendment, through the Fourteenth Amendment, of the U.S. Constitution alleging that Dr. Roe's actions deprived the Myerses of their cattle without due process of law and without just compensation.[4] (*Id.* ¶ 2). Third, the Myerses assert a state law conversion claim, alleging Dr. Roe intentionally deprived the Myerses of their

---

[3] The Myerses inaccurately cite to Article II, Section 14 of the Montana Constitution. Section 14 provides for adult rights to persons 18 years or older. Article II, Section 17 provides persons the with the right to due process of law.

[4] The takings claim is not asserted in the "Causes of Action" section of the Complaint. However, the Myerses "assert a 14th Amendment takings claim" on page 2 of the Complaint. (Doc. 1 ¶ 1). Though inartfully pled, the Court will assume that the Myerses allege an unlawful taking under the Fifth Amendment, which is made applicable to the states through the Fourteenth Amendment's Due Process Clause.

rightful possession of the cattle and sold the Myerses' cattle to fund the costs of the unsuccessful criminal prosecution.[5]  (*Id.* ¶ 48).  The Myerses seek actual monetary damages for the loss of the cattle as well as punitive damages for Dr. Roe's malicious, reckless, and total disregard of the Myerses' rights.  (*Id.* ¶¶ 45, 46).  The Myerses request no injunctive relief.

Dr. Roe moves to dismiss the Complaint on the grounds that: (1) the Myerses fail to state a claim upon which relief can be granted; (2) the Myerses failed to properly name him as a defendant; and (3) the Myerses failed to timely serve the Complaint pursuant to Rule 4.  (Docs. 11, 12, 27).

The Court finds several defects in the Myerses' Complaint warranting dismissal; however, the Court will not reach the merits of each defense articulated by Dr. Roe because the Myerses' have failed to state a claim against him.

## II.    Legal Standard

A Rule 12(b)(6) motion tests the legal sufficiency of a pleading.  *Navarro v. Block*, 250 F.3d 729, 739 (9th Cir. 2001).  To survive a 12(b)(6) motion, the complaint must contain "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp v. Twombly*, 550 U.S. 544, 570 (2007)).  A claim is plausible

---

[5] The Myerses do not cite a Montana code section in the Complaint.  Thus, for purposes of this Order, the Court assumes the Myerses allege Defendants' violation of Montana Code Annotated § 27-1-320.

if the complaint alleges enough facts to draw a reasonable inference that the accused is liable. *Id.* Though the complaint does not need to provide detailed factual allegations, it cannot merely assert legal conclusions. *Twombly*, 550 U.S. at 555.

When ruling on a 12(b)(6) motion, a court must accept the complaint's well-pled factual allegations as true and construe them in the light most favorable to the non-movant. *Usher v. City of Los Angeles*, 828 F.2d 556, 561 (9th Cir. 1987). Dismissal "is appropriate only where the complaint lacks a cognizable legal theory or sufficient facts to support a cognizable legal theory." *Mendiondo v. Centinela Hosp. Med. Ctr.*, 521 F.3d 1097, 1104 (9th Cir. 2008).

## III.  Discussion

The Court ultimately finds that the Myerses fail to plausibly allege sufficient facts to support a cognizable legal theory that withstands a Rule 12(b)(6) motion to dismiss. The Myerses' Complaint merely "recites a collection of general factual allegations at the outset but fails to connect those facts to the elements comprising [P]laintiff[s'] causes of action[.]" *Watt v. Antillen N.V.*, No. 2:24-cv-00155, 2024 WL 4436966, at *2 (W.D. Wash. Oct. 7, 2024). While there is no particular formula to survive a Rule 12(b)(6) motion, this complaint style is impermissible when it "denies defendants adequate notice of the allegations supporting each cause of action." *Id.* Further, it goes beyond the Court's obligation to draw reasonable inferences in Myerses' favor and forces the Court to "engage in guesswork to piece

7

[a patchwork] puzzle together." *John Ketch LLC v. San Juan Cnty.*, 759 F. Supp. 3d 1121, 1131 (W.D. Wash. 2024). Therefore, for the following reasons, the Court dismisses the Complaint as to Dr. Roe.

A.    *42 U.S.C. § 1983 Claim – Violation of the Right to a Timely Post Seizure Hearing*

Pursuant to Rule 12(b)(6), Dr. Roe argues that the Myerses fail to allege that he acted under color of state law and thus, Dr. Roe cannot be sued under § 1983. Alternatively, if he had acted under color of state law, he argues he is entitled to qualified immunity. (Doc. 12 at 8–10). The Court agrees with Dr. Roe's first argument; however, the Court declines to consider Dr. Roe's second argument because the Myerses do not set forth enough facts to determine whether qualified immunity would extend to Dr. Roe as a private party. *Compare Wyatt v. Cole*, 504 U.S. 158, 167 (1992) (The Court found qualified immunity did not extend to private defendants sued under § 1983 because the defendants did not have a connection to government and pursued purely private ends.) *with Filarsky v. Delia*, 566 U.S. 377, 380 (2012) (The Court found that a private attorney who was retained by a city was entitled to seek protection of qualified immunity under § 1983.).

To state a claim under § 1983, a plaintiff "must plead that (1) the defendants acted under the color of state law to (2) deprive plaintiffs of rights secured by the Constitution or federal statutes." *Gibson v. United States*, 781 F.2d 1334, 1338 (9th Cir. 1986). "While generally not applicable to private parties, a § 1983 action can

lie against a private party when 'he is a willing participant in joint action with the State or its agents.'" *Kirtley v. Rainey*, 326 F.3d 1088, 1092 (9th Cir. 2003) (quoting *Dennis v. Sparks*, 449 U.S. 24, 27 (1980)). To determine whether a private party, such as Dr. Roe, acted under color of state law, the Ninth Circuit recognizes "at least four different criteria, or tests, used to identify state action: '(1) public function; (2) joint action, (3) governmental compulsion or coercion; and (4) governmental nexus." *Id.* (quoting *Sutton v. Providence St. Joseph Med. Ctr.*, 192 F.3d 826, 835–36 (9th Cir. 1999)).

Here, the Myerses have made no allegations which, if proved, could establish any of the four criteria recognized by the Ninth Circuit. The only facts the Myerses allege about Dr. Roe are as follows: (1) Dr. Roe "actively sought the seizure of [the] Myers[es]' cattle in cooperation with and under the authority of other defendants;" (2) Dr. Roe participated in the seizure of [the] Myers[es]' cattle; (3) Dr. Roe arranged for the cattle's transportation to the Centana feed lot; and (4) Dr. Roe recommended that criminal charges be brought. (Doc. 1 ¶ 6). Although § 1983 claims are not subject to heightened pleading requirements, *Leatherman v. Tarrant Cnty.*, 507 U.S. 163, 164 (1993), a Complaint must still allege facts sufficient to give a defendant notice of the grounds on which the claim rests. The Myerses' allegations are devoid of specific facts identifying Dr. Roe's individual acts that constitute a constitutional violation. Moreover, the factual scenarios presented are wholly unrelated to a

cognizable theory linking private actors to State action under § 1983. In his defense, Dr. Roe argues that providing professional services to State authorities does not automatically create a relationship that would rise to the level of action under color of state law. (Doc. 12 at 9). The Myerses do not respond to this argument, and the Court declines to engage in legal and factual guesswork on behalf of the Myerses. Accordingly, the Court dismisses the § 1983 due process claim because the Complaint lacks a cognizable "legal theory [and] sufficient facts to support a cognizable legal theory" to withstand a Rule 12(b)(6) motion. *See Mendiondo*, 521 F.3d at 1104.

### B.    *Fifth Amendment Takings Claim*

To state a claim under the Fifth Amendment's Takings Clause, the Myerses must show that the government took their property "for public use, without just compensation." U.S. Const. amend. V.   It is unclear whether the Myerses bring a cause of action under § 1983 for a Fifth Amendment violation or if the Fifth Amendment claim is pled on its own.   In either case, the Myerses fail to plausibly allege a violation of a constitutional right and thus, the claim fails under Rule 12(b)(6). *Sampson*, 947 F.3d at 1018.

Dr. Roe asserts that there is no cognizable takings claim when property is seized by a valid warrant. (Doc. 12 at 7). The Court agrees. It is firmly established that "[t]he government may not be required to compensate an owner for property,

10

which it has already lawfully acquired under the exercise of governmental authority other than the power of eminent domain." *Bennis v. Michigan*, 516 U.S. 442, 452 (1996). Because the Myerses' property was seized pursuant to a valid warrant, there was no violation of the Takings Clause. *See Young v. Cnty. of Hawaii*, 578 Fed. Appx. 728, 729 (9th Cir. 2014).

However, the Myerses argue in their response brief that the "taking occurred when the cattle were sold and the proceeds used to pay a county bill." (Doc. 24 at 12). These facts are not alleged in the Complaint. Rather, the Myerses allege that they "signed a stipulation allowing the forfeiture to proceed." (Doc. 1 ¶ 33). Even if some process surrounding the stipulation qualified as a Fifth Amendment taking, the Court finds no connection between Dr. Roe's actions and the forfeiture actions, and the Court will not engage in legal or factual guesswork on behalf of the Myerses.

Ultimately, the Myerses allege insufficient facts to support a violation of their Fifth Amendment rights and fail to set forth a cognizable legal theory that demonstrates why a lawful and otherwise voluntary forfeiture constitute a Fifth Amendment takings claim. For these reasons, the Court dismisses the claim because the Complaint lacks a cognizable "legal theory [and] sufficient facts to support a cognizable legal theory" to withstand a Rule 12(b)(6) motion. *See Mendiondo*, 521 F.3d at 1104.

C.    *State Law Claims*

When a federal court dismisses all federal claims in a case, it cannot retain jurisdiction over any remaining state law claims. *Scott v. Pasadena Unified Sch. Dist.*, 306 F.3d 646, 664 (9th Cir.). Because the Myerses allegations arising under federal statute and the U.S. Constitution fail under Rule 12(b)(6), the Court declines to exercise supplemental jurisdiction over the any state law or state constitutional claims. For this reason, the Court dismisses the state law claims.

D.    *Leave to Amend*

Leave to amend should be granted unless the pleading "could not possibly be cured" by the allegation of other facts. *Bly-Magee v. California*, 236 F.3d 1014, 1019 (9th Cir. 2001). Though the Myerses' Complaint is deficient in facts, the Court primarily identifies large defects of legal theory and not of pleading. Because additional factual allegations are unlikely to cure these defects, further amendment would be futile.

**IV.    Conclusion**

For the reasons stated, the Myerses fail to state a claim upon which relief can be granted.

Therefore, IT IS HEREBY ORDERED that Defendant Dr. Daniel Roe's Motion to Dismiss (Doc. 11) is GRANTED. The Complaint is dismissed with prejudice, and the Clerk of Court shall close the case as to this Defendant.

DATED this _15th_ day of August, 2025.

SUSAN P. WATTERS
United States District Judge